**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**WESTERN DIVISION**

| | |
|---|---|
| BRIANNA FORD, on behalf of herself and all others similarly situated, | |
| Plaintiff, | |
| v. | CASE NO. 4:23-cv-635 |
| FARHA ROOFING, LLC, FARHA ROOFING KC, LLC, and SUMMA MEDIA, LLC, | |
| Defendants. | |
| _____ | |
| FARHA ROOFING, LLC, and FARHA ROOFING KC, LLC, | |
| Third Party Plaintiffs, | |
| v. | |
| SUMMA MEDIA, LLC, | |
| Third Party Defendant. | |
| _____ | |

**UNOPPOSED MOTION FOR CLASS CERTIFICATION**
**AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

i

# Table of Contents

Introduction ........................................................................................................................... 1

Summary of the Settlement .................................................................................................. 1

The Telephone Consumer Protection Act ........................................................................... 3

Summary of Facts Underlying Plaintiff's Claims ............................................................... 3

Argument .............................................................................................................................. 4

    I.   The class meets all requirements for certification under Rule 23 ..................................... 4

        A.   The TCPA claims at bar are well suited for class treatment. .......................................... 4

        B.   The class satisfies the requirements of Rule 23(a) ......................................................... 5

            1.   The class is so numerous that joinder of all members is impracticable. .................... 5

            2.   Common questions exist as to each class member. ..................................................... 5

            3.   Plaintiff's claims are typical of the claims of class members. ................................... 6

            4.   Plaintiff and her counsel will fairly and adequately protect the interests of class members. ................................................................................................................................. 7

        C.   The class satisfies the requirements of Rule 23(b). ....................................................... 8

            1.   Questions common to class members predominate over any questions affecting only individual members .......................................................................................................... 8

            2.   A class action is superior to other available methods for the fair and efficient adjudication of this matter. ............................................................................................... 9

    II.   The settlement is fair, reasonable, and adequate, under Rule 23(e). .............................. 11

        A.   The parties fairly and honestly negotiated the Settlement. ........................................... 13

        B.   The merits of the case, balanced against the amount recovered through the Settlement, supports preliminary approval. .............................................................................................. 13

        C.   Defendants' financial position favors preliminary approval. ....................................... 17

        D.   The complexity and expense of future litigation supports preliminary approval. ........ 17

        E.   The unopposed nature of Plaintiff's request favors preliminary approval of the Settlement. .............................................................................................................................. 17

F.     The remaining Rule 23(c)(2) factors support preliminary approval. ............................ 18

III.    The notice plan is sufficient. ........................................................................ 19

IV.    This Court should set a final fairness hearing. ............................................... 21

Conclusion ..................................................................................................................... 21

## Table of Authorities

**Cases**

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ............................................ 4

*Albelo v. Epic Landscape Prods., L.C.*, No. 4:17-cv-0454-DGK, 2021 U.S. Dist. LEXIS 120219 (W.D. Mo. June 28, 2021) ................................................................................................................ 5

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997) ................................................................... 8

*Bingollu v. One Source Tech., LLC*, No. 22-cv-77 (DTS), 2024 U.S. Dist. LEXIS 169921 (D. Minn. Sep. 20, 2024) ..................................................................................................................... 5

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ............................... 6

*Bredthauer v. Lundstrom*, No. 4:10CV3132, 2012 U.S. Dist. LEXIS 147903 (D. Neb. Oct. 12, 2012) ...................................................................................................................................... 12

*Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ....................................................................................................................................................... 15

*Duke v. Bank of Am.*, N.A., No. 12-4009 (N.D. Cal. Feb. 19, 2014) ........................................... 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974) .................................................................... 19

*Gehrich v. Chase Bank United States*, 316 F.R.D. 215 (N.D. Ill. 2016) ................................. 6, 16

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 6684 (E.D. Mo. Jan. 18, 2017) ......................................................................................................................... 6, 9

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ...................................................... 8, 14

*Hashw v. Dept. Stores Nat'l. Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) ........................... 11, 16

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) .............. 16

*In re Charter Communs., Inc.*, No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005) ......................................................................................................................... 6, 12

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ..................................................................................................... 13

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ............... 12, 13

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, Case No. 02-921-FJG, 2004 U.S. Dist. LEXIS 23342 (W.D. Mo. Apr. 20, 2004) ................................................................................. 12

*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ...................................... 4

iv

*J.T. Hand v. ARB KC, LLC*, No. 4:19-cv-00108-NKL, 2019 U.S. Dist. LEXIS 207798 (W.D. Mo. Dec. 3, 2019) ................................................................................................ 3

*James v. JPMorgan Chase Bank, N.A.*, No. 8:15-2424, 2016 U.S. Dist. LEXIS 167022 (M.D. Fla. Nov. 22, 2016) ................................................................................. 10, 15

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) ......................................... 17

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ................................................................................. 17

*Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019)............................................... 10

*Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058 (N.D. Ga. Feb. 23, 2017) .................... 15

*Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 U.S. Dist. LEXIS 123541 (N.D. Ga. Sept. 7, 2016) ................................................................................................................ 15

*Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2017 U.S. Dist. LEXIS 17546 (N.D. Ga. Jan. 30, 2017) ................................................................................................................ 16

*Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 U.S. Dist. LEXIS 23103 (E.D. Mo. Feb. 7, 2023) ........................................................................................................... 15, 16

*Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301 (S.D. Fla. 2017) ........................................... 5

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ........................................ 5

*Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) .............. 7, 10, 16

*Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015)............................. 15

*Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017).. 15

*Roberts v. Source for Pub. Data*, No. 2:08-cv-04167-NKL, 2009 U.S. Dist. LEXIS 107057 (W.D. Mo. Nov. 17, 2009)................................................................................................. 7

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ............................................................................................................ 16

*Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 114080 (E.D. Mo. Dec. 8, 2009) ................................................................. 7

*Siding & Insulation Co. v. Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442 (N.D. Ohio 2012) ..... 11

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) ...................................... 4

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 U.S. Dist. LEXIS 174975 (E.D. Mo. Dec. 11, 2013)....................................... 6, 9, 10, 16

v

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014)....................................................................................................................... 16

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988)........................................................... 12, 17

*Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 U.S. Dist. LEXIS 23869 (N.D. Ill. Feb. 27, 2015) ........................................................................................................................................ 15

*Williams v. Bluestem Brands, Inc.*, No. 171971, 2019 U.S. Dist. LEXIS 56655 (M.D. Fla. Apr. 2, 2019) ........................................................................................................................................ 15

*Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ........................................................................................................................................ 16

**Statutes**

47 C.F.R. § 64.1200 .................................................................................................................. 3

47 U.S.C. § 227 ......................................................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966) ...................................................... 9

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. passim

**Treatises**

1 Newberg, Class Actions § 3.05 at 3-25 (3d ed. 1992) ............................................................. 5

4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002) ........ 11

Manual For Complex Litigation § 21.632 (4th ed. 2004)..................................................... 11, 21

## Introduction

Brianna Ford ("Plaintiff") filed this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, and on behalf of a nationwide class, alleging that Farha Roofing, LLC ("Farha Roofing"), Farha Roofing KC, LLC ("Farha KC") (Farha Roofing and Farha KC are collectively, "Farha") and Summa Media, LLC ("Summa") (collectively with Farha, "Defendants") delivered text messages to Plaintiff's cellular telephone number promoting Farha's roofing business, despite a lack of prior express written consent, and despite Plaintiff's status on the National Do-Not-Call Registry ("DNC Registry"). Following over a year of vigorously contested litigation, and as a result of extensive arm's-length negotiations—in part before experienced mediator and former Magistrate Judge David Jones—Plaintiff and Defendants reached an agreement to resolve this matter.[1] The parties now request that this Court: (1) grant Plaintiff's unopposed requests to certify the class for settlement purposes; (2) preliminarily approve the settlement as fair, reasonable, and adequate; (3) appoint Plaintiff as the class representative and Plaintiff's counsel as class counsel; (4) approve and direct notice to class members; and (5) set a final fairness hearing date.

## Summary of the Settlement

The parties agreed to resolve this matter on behalf of the following class:

> All persons throughout the United States (1) to whom Summa Media, LLC, Farha Roofing, LLC, or Farha Roofing KC, LLC delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Farha Roofing, LLC's or Farha Roofing KC, LLC's or their business partners' goods or services,

---

[1] The settlement agreement and its exhibits—including a proposed long-form notice, a proposed postcard notice, a proposed claim form, a proposed preliminary approval order, and a proposed final approval order—are appended to the Declaration of Alex D. Kruzyk, attached as Exhibit A.

(2) from September 13, 2019 to October 16, 2024, and (3) whose residential telephone number is included in the Settlement Class Data.

To compensate class members, Defendants will create a non-reversionary common fund in the amount of $250,000.00. Paid from the common fund will be: (1) compensation to class members; (2) the cost of notice to class members and claims administration for class members; (3) litigation costs and expenses not to exceed $8,000.00, for which Plaintiff's counsel will separately petition this Court for; (4) reasonable attorneys' fees, calculated as a percentage of the common fund, for which Plaintiff's counsel will separately petition this Court for; (5) and an incentive award to Plaintiff not to exceed $10,000.00, for which Plaintiff's counsel will separately petition this Court.

A third-party claims administrator will mail notice of the settlement directly to class members, together will a detachable claim form that class members can use to submit claims. The claims administrator will also establish a website that provides information about the settlement, and through which class members can submit claims electronically. Also, the claims administrator will set up a toll-free telephone number that provides information about the settlement.

Each class member who submits a valid, approved claim will be entitled to a *pro rata* share of the non-reversionary common fund after deducting: (1) the cost of notice to class members and costs of claims administration for class members; (2) litigation costs and expenses, subject to this Court's approval; (3) reasonable attorneys' fees, subject to this Court's approval; and (4) an incentive award to Plaintiff, subject to this Court's approval.

Any class member who wishes to exclude himself or herself from the settlement can submit a request for exclusion. Likewise, any class member who wishes to object to the settlement can submit an objection.

Upon this Court's entry of a final judgment, Plaintiff and each non-excluded class member

2

will release and forever discharge claims they have against Defendants under the TCPA and related state laws that regulate telemarketing or the use of automatic dialing equipment.

### The Telephone Consumer Protection Act

The TCPA makes it unlawful to "[i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express *written* consent of the called party[.]" 47 C.F.R. § 64.1200(a)(2). "Prior express written consent," in turn, is defined as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).[2] Additionally, pursuant to 47 C.F.R. § 64.1200(d)(4), "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." Lastly, given the facts underlying this matter, a text message is a "call" as defined by the TCPA. *See J.T. Hand v. ARB KC, LLC*, No. 4:19-cv-00108-NKL, 2019 U.S. Dist. LEXIS 207798, at *3 (W.D. Mo. Dec. 3, 2019).

### Summary of Facts Underlying Plaintiff's Claims

In August 2022, Plaintiff received a series of text messages to her cellular telephone

---

[2]      Unless otherwise indicated, all emphasis is added, and all internal citations and quotations are omitted.

number from (913) 372-2731 advertising Farha's roofing services: specifically, to repair, replace, or inspect Plaintiff's roof. ECF No. 26 at ¶¶ 16-17. Plaintiff's telephone number is, and has been at all relevant times, registered to the National Do-Not-Call Registry, since she registered it on September 26, 2006. *Id.* at ¶ 15. Critical to Plaintiff's claims, Plaintiff did not recognize Defendants, did not request any quotes or estimates for roof replacements, and did not provide Defendants written consent to deliver advertising or marketing text messages to her cellular telephone number. *Id.* at ¶¶ 18-22.

And Plaintiff is not alone in her experience with Defendants. Indeed, Defendants delivered or attempted to deliver text messages similar to the messages Plaintiff received to 5,723 telephone numbers during the class period, of which, Plaintiff believes—and Defendants do not contest for the purposes of this motion—approximately 3,706 are residential cellular telephone numbers. *See* Exhibit A, at ¶ 32.

## Argument

### I. The class meets all requirements for certification under Rule 23.

#### A. The TCPA claims at bar are well suited for class treatment.

As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013). And this remains true in the context of advertisement and text message claims under the TCPA. *See, e.g., Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) (certifying a class of "persons in the United States of America who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U"); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 391 (N.D. Ohio 2012) (certifying a class "consisting of all persons sent Viking texts with an ATDS since February 1, 2011"); *Mohamed v. Am. Motor Co.,*

*LLC*, 320 F.R.D. 301, 308 (S.D. Fla. 2017) (certifying a class of "all persons in the United States (i) who received a text message (ii) on his or her cellular telephone (iii) from InstantCarOffer.com for Off Lease Only, Inc. (iv) sent using Instant Car Offer.com's systems (v) from a period of four (4) years prior to the filing of the initial Complaint, September 4, 2011, to the date of class certification").

### B. The class satisfies the requirements of Rule 23(a).

For the class to be certified, it must first satisfy all requirements under Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

### 1. The class is so numerous that joinder of all members is impracticable.

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Any class consisting of more than forty members should raise a presumption that joinder is impracticable." 1 Newberg, Class Actions § 3.05 at 3-25 (3d ed. 1992); *see also Bingollu v. One Source Tech., LLC*, No. 22-cv-77 (DTS), 2024 U.S. Dist. LEXIS 169921, at *4 (D. Minn. Sep. 20, 2024) ("courts in the Eighth Circuit often find that classes exceeding 40 members meet the numerosity requirement."); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement.").

Here, the class includes between 3,706 and 5,723 members. *See supra* Summary of Facts Underlying Plaintiff's Claims. It is therefore sufficiently numerous that joinder is impracticable. *See Albelo v. Epic Landscape Prods., L.C.*, No. 4:17-cv-0454-DGK, 2021 U.S. Dist. LEXIS 120219, at *6 (W.D. Mo. June 28, 2021) (1,100 member class sufficient for numerosity requirements).

### 2. Common questions exist as to each class member.

5

"Rule 23(a)(2)'s 'commonality' requirement is satisfied if a claim arises out of the same legal or remedial theory." *In re Charter Communs., Inc.*, No. 4:02-CV-1186 CAS, 2005 U.S. Dist. LEXIS 14772, at *36 (E.D. Mo. June 30, 2005). "The plaintiff must show that 'a classwide proceeding will generate common answers apt to drive the resolution of the litigation.'" *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 U.S. Dist. LEXIS 174975, at *19 (E.D. Mo. Dec. 11, 2013).

This case presents a host of common questions. For example, whether Defendants sent the text messages at issue, "if these calls constitute 'telephone solicitation,' if Plaintiffs are entitled to damages, the amount of damages, and if Plaintiffs are entitled to injunctive relief" are all common questions of law and fact. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 6684, at *13 (E.D. Mo. Jan. 18, 2017).

Also, that each class member suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question. *See Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Here there is a common injury, resulting from receipt of the allegedly offending calls . . . . The Court likewise determines that there are questions of law or fact common to each class member.").

### 3. Plaintiff's claims are typical of the claims of class members.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Like commonality, the test for typicality is "not an onerous one." *St. Louis Heart Cntr.*, 2013 U.S. Dist. LEXIS 174975, at *20. Simply, "[t]his prerequisite can be met if the claims or defenses all stem from a single event or if the plaintiff can demonstrate that the class shares the same or similar grievances." *Id.*; *see also*

*Kelly v. Phiten USA, Inc.*, 277 F.R.D. 564, 568 (S.D. Iowa 2011) ("The burden is fairly easily met so long as other class members have claims similar to the named plaintiff.").

Here, Plaintiff received the same type of text message that each class member did, and was therefore harmed in the same way as each class member. *See supra* Summary of Facts Underlying Plaintiff's Claims. Plaintiff's claims are therefore typical of the claims of the class members. *See Gehrich*, 316 F.R.D. at 225 ("All class members allegedly received calls or text messages from Chase in violation of the TCPA, and that is enough to satisfy the typicality requirement."); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("The Court finds that the proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim.").

### 4. Plaintiff and her counsel will fairly and adequately protect the interests of class members.

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class(es). Fed. R. Civ. P. 23(a)(4). "The purpose of the adequacy prong of Rule 23(a) is 'to uncover conflicts of interest between named parties and the class they seek to represent.'" *Schoenbaum v. E.I. Dupont De Nemours & Co.*, No. 4:05CV01108 ERW, 2009 U.S. Dist. LEXIS 114080, at *27-28 (E.D. Mo. Dec. 8, 2009). And, "[i]n the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action." *Roberts v. Source for Pub. Data*, No. 2:08-cv-04167-NKL, 2009 U.S. Dist. LEXIS 107057, at *15 (W.D. Mo. Nov. 17, 2009).

Here, Plaintiff is capable of protecting, has protected, and will continue to protect, the interests of absent class members. *See* Exhibit A at ¶ 44. From the outset, Plaintiff has been, and remains, involved in this matter. She communicates regularly with her counsel, and is prepared to

7

make all necessary decisions involving this case with class members' best interests in mind. *Id*. at ¶¶ 45, 47.

As well, Plaintiff retained counsel experienced and competent in class action litigation, including that under the TCPA. *See* Exhibit A, at ¶¶ 9-20. Indeed, courts have appointed Plaintiff's counsel as class counsel in other consumer protection class actions in the past few years, and Plaintiff's counsel, Alex D. Kruzyk has contributed to numerous other approved class actions as an associate attorney where he was not individually named as class counsel. *Id*. at ¶¶ 9-13.

### C.  The class satisfies the requirements of Rule 23(b).

After satisfying all requirements under Rule 23(a), the class must then satisfy elements of Rule 23(b), commonly referred to as predominance and superiority.

#### 1.  Questions common to class members predominate over any questions affecting only individual members.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3); "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes,

because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, to establish a violation of the TCPA, Plaintiff and class members must demonstrate that Defendants delivered the subject text messages absent requisite consent, and whether those text messages—which were standardized in form and format—contained all required information mandated by the TCPA. *See Golan*, 2017 U.S. Dist. LEXIS 6684, at *13 (". . . if these calls constitute 'telephone solicitation,' if Plaintiffs are entitled to damages, the amount of damages, and if Plaintiffs are entitled to injunctive relief [are] questions [that] predominate because common evidence may be used to establish the answers."); *St. Louis Heart Ctr.*, 2013 U.S. Dist. LEXIS 174975, at *27 ("Vein Centers obtained the fax numbers at issue in long lists from a handful of sources and created form advertisements that contained essentially identical opt-out language. Whether that language complies with the TCPA and its applicable regulations is a common question that can be answered on a classwide basis. . . Accordingly, predominance is met."). Thus, common questions predominate over any individual issues.

### 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id*.

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz. 2019) ("The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this matter."); *see also St. Louis Heart Ctr.*, 2013 U.S. Dist. LEXIS 174975, at *31 ("All in all, a class action is superior to other methods of adjudicating this controversy."); *Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims."). Here, the superiority of a class action is particularly compelling given that the class includes thousands of members.

Moreover, no one class member has an interest in controlling the prosecution of this action. Simply, the claims of all members of the proposed TCPA classes are identical, they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 U.S. Dist. LEXIS 167022, at *3 (M.D. Fla. Nov. 22, 2016) ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his action.").

Furthermore, absent a class action, thousands of claims like Plaintiff's—all of which stem from Defendants' identical conduct—will likely go un-redressed. *See Siding & Insulation Co. v.*

*Beachwood Hair Clinic, Inc.*, 279 F.R.D. 442, 446 (N.D. Ohio 2012) ("Under the TCPA, each individual plaintiff is unlikely to recover more than a small amount (the greater of actual monetary loss or $500). Individuals are therefore unlikely to bring suit against [the defendant], which makes a class action the superior mechanism for adjudicating this dispute.").

A class action is therefore the superior method to adjudicate all aspects of this controversy.

## II. The settlement is fair, reasonable, and adequate, under Rule 23(e).

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class action settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002).

After the court makes a preliminary fairness evaluation, and notice has been issued, the court must then hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* Manual for Complex Litigation § 21.633-34; Newberg, § 11.25.

As an initial matter, "the settlement enjoys a presumption of fairness." *Hashw v. Dept. Stores Nat'l. Bank*, 182 F. Supp. 3d 935, 943 (D. Minn. 2016) (citing *In re Uponor, Inc. F1807 Plumbing Fittings Prods. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013)). No matter, and with the understanding that a full fairness determination is not necessary at this preliminary approval stage, the Eighth Circuit identified four factors for consideration in analyzing the fairness,

reasonableness, and adequacy of a class action settlement under Rule 23(e): (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *Van Horn v. Trickey*, 840 F.2d 604, 606 (8th Cir. 1988).

In making its preliminary fairness assessment, the court may also consider "procedural fairness to ensure the settlement is not the product of fraud or collusion," the "experience and opinion of counsel on both sides"—including whether the "settlement resulted from arm's length negotiations, and whether a skilled mediator was involved"—and also "the settlement's timing, including whether discovery proceeded to the point where all parties were fully aware of the merits." *Bredthauer v. Lundstrom*, No. 4:10CV3132, 2012 U.S. Dist. LEXIS 147903, at *13 (D. Neb. Oct. 12, 2012).

As well, Rule 23(e) mandates consideration of several additional factors, including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate. And in applying these factors, this Court should be guided by the "long-standing policy favoring settlements of civil actions in federal courts." *In re Charter*, 2005 U.S. Dist. LEXIS 14772, at *14 ("this policy is especially applicable to class action litigation"); *accord In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, Case No. 02-921-FJG, 2004 U.S. Dist. LEXIS 23342, at *31 (W.D. Mo. Apr. 20, 2004) ("It is the surety of settlement that makes it a favored policy in dispute resolution as compared to unknown dangers and unforeseen hazards of litigation.").

**A. The parties fairly and honestly negotiated the Settlement.**

The parties agreed to settle this matter following lengthy negotiation, and after a June 10, 2024 mediation with Hon. David Jones resulted in an impasse.[3] Accordingly, the settlement is not the product of collusion, but rather the ultimate result of lengthy arms'-length negotiations conducted over many months, and initially involving the assistance of an experienced mediator. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ("any suggestion of fraud or collusion" regarding settlement was "baseless," as "the Settlement was reached only after many months of hard-fought negotiations").

**B. The merits of the case, balanced against the amount recovered through the Settlement, supports preliminary approval.**

"The most important consideration in deciding whether a settlement is fair, reasonable, and adequate is the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement." *In re Wireless*, 396 F.3d at 933. Here, the parties vehemently disagree about the merits, as noted by the motion practice to date. *See* ECF Nos. 33-36, 38-40. They also disagree

---

[3]     "David E. Jones stepped down as a United States Magistrate Judge in the Eastern District of Wisconsin at the end of September of 2019 and began a private Alternative Dispute Resolution (ADR) career with Resolute Systems, LLC. Judge Jones concentrates his ADR practice on the resolution of complex commercial, intellectual property, employment, municipal liability §1983 claims, discovery and contract disputes. In addition to acting as a mediator and arbitrator in state and federal civil matters, Judge Jones also serves as a special master and discovery referee. judge Jones received his commission as a U.S. Magistrate Judge in June 26, 2015. Prior to that, he was a partner in the Madison, Wisconsin, and Washington, D.C., offices of Heller Ehrman and then Perkins Coie, where he focused on antitrust and intellectual property. In antitrust, he counseled and defended technology and financial services clients in monopolization actions, including trials of statewide class claims. In IP, Judge Jones represented medical services and pharmaceutical companies in life-science patent and Hatch-Waxman trials across the country. In all, Judge Jones tried over twenty cases to verdict." https://judgejonesadr.com/biography/ (last visited December 16, 2024).

regarding whether Plaintiff could satisfy the elements of Rule 23 in an adversarial proceeding. Given these considerations, preliminary approval of the settlement is appropriate.

In evaluating the fairness of the consideration offered in settlement, it is not the role of the court to second-guess the negotiated resolution of the parties. The Eighth Circuit has noted: "We have recognized that a class action settlement is a private contract negotiated between the parties. Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless*, 396 F.3d at 934. That is, the issue is not whether the Settlement could have been "better," *but whether it is fair*: "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Here, the Settlement provides substantial cash relief to participating class members. The settlement fund will be non-reversionary—meaning no money will return to Defendants—and amounts to $250,000.00. Given, therefore, that Defendants sent or attempted to send text messages to approximately 5,723 telephone numbers during the class period, of which, Plaintiff believes approximately 3,706 are residential cellular telephone numbers based on an expert assessment, those telephone numbers constitute the universe of potential class members, *see* Settlement Agreement, ¶¶ I(HH)-(II), the raw, per-potential class member value is between $43.68 ($250,000 / 5,723 = $43.68) and $67.46 ($250,000 / 3,706 = $67.46). Ultimately, this range is only a good faith estimate, based on 1) a pool of all telephone numbers that received the same text messages as Plaintiff in the relevant time period absent prior express written consent; which would then be necessarily narrowed by (2) the subset of those telephone numbers that are residential telephone numbers, as opposed to business telephone numbers. As explained *supra*, Plaintiff's retained

expert analyzed the pool of telephone numbers and determined that approximately 3,706 were likely residential cellular telephone numbers, but these estimates would then be subject to sworn attestation of the proposed class members via their completion of a claim form.

And this is in line with the raw, per-potential settlement class member value of many similar TCPA class action settlements. *See, e.g.*, *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 U.S. Dist. LEXIS 23103, at *6 (E.D. Mo. Feb. 7, 2023) ($6.42 per potential class member); *Williams v. Bluestem Brands, Inc.*, No. 171971, 2019 U.S. Dist. LEXIS 56655, at *4 (M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member); *Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) ($4.65 per potential class member); *James v. JPMorgan Chase Bank, N.A.*, No. 15-2424, 2016 U.S. Dist. LEXIS 167022, at *1 (M.D. Fla. Nov. 22, 2016) ($5.55 per potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 15-cv-1270, 2016 WL 5109533 (N.D. Ga. Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 U.S. Dist. LEXIS 123541 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 U.S. Dist. LEXIS 23869 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am.*, N.A., No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

Furthermore, the Settlement is expected to exceed, on a per-claimant recovery basis, many other approved TCPA class action settlements. Indeed, Plaintiff's counsel estimates—based on historical claims rates and the likely number of bona fide class members—that after deducting the expenses, participating class members will receive between $250 and $500 each. This would

surpass many comparable figures in other approved TCPA class settlements. *See, e.g.*, *Miles*, 2023 U.S. Dist. LEXIS 23103, at *6 ($157.10 per claimant); *Gehrich*, 316 F.R.D. at 228 ($52.50 per claimant); *Hashw*, 182 F. Supp. 3d at 947 ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14-10457, 2016 WL 4505169, at *8 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855, at *5 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101).

Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 U.S. Dist. LEXIS 17546, at *11 (N.D. Ga. Jan. 30, 2017). And what's more, the Settlement provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr.*, 2013 U.S. Dist. LEXIS 174975, at *31 (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). Therefore, because of the Settlement, participating class members will receive money they otherwise would have not likely pursued on their own.

### C. Defendants' financial position favors preliminary approval.

Defendants' collective financial position strongly favors preliminary approval. Farha is a regional construction and contracting firm, and Summa a small advertising and marketing firm—each would face potential solvency issues should this matter fail to settle and the Court or a jury award ultimate judgment in favor of Plaintiff and the proposed classes. As a result, the certainty that comes with *this* Settlement—and the substantial compensation available to the members of the class—represents an excellent recovery for the class, particularly in the face of zero recovery should this matter not settle, Defendants expend further resources, and a future class judgment drive Defendants to potential insolvency.

### D. The complexity and expense of future litigation supports preliminary approval.

The Settlement constitutes an objectively favorable result for class members and outweighs the mere possibility of future relief after protracted and expensive litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation.").

By agreeing to settle now, the parties avoid expensive, protracted future litigation. This factor supports preliminary approval. *See Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (noting that the "complexity and expense of future litigation" weighed in favor of settlement approval).

### E. The unopposed nature of Plaintiff's request favors preliminary approval of the Settlement.

The lack of opposition to the Settlement (at this time) favors preliminary approval. *See Van Horn*, 840 F.2d at 606. While Plaintiff's motion for preliminary approval is unopposed, class members will be provided with an opportunity to lodge any objections in response to class notice.

This factor therefore could play a more important role in connection with final approval, depending on whether, and if so, how many, class members object.

**F. The remaining Rule 23(c)(2) factors support preliminary approval.**

Consideration of the factors set forth in Rule 23(e) likewise supports preliminary approval. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[4] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as that the proposal was negotiated at arm's length and that the relief provided to the Settlement Class is adequate—are subsumed within the above discussion of the *Van Horn* factors, and Plaintiff does not address them again here. With respect to Plaintiff and her counsel, Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members. *See* Exhibit A at ¶¶ 44-47. She stayed updated on the case and spoke with her counsel about it regularly. *Id.* She produced documents, responded to discovery requests, and attended mediation. *Id.* And she remained prepared to, and did, make all necessary decisions required of her in the best interests of class members. *Id.* Similarly, Plaintiff's counsel—who are

---

[4]   The agreement between all parties is the Settlement Agreement, which is appended to Exhibit A. *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

18

experienced in complex class action litigation and have served as class counsel (directly, or as associate attorneys) on numerous occasions, zealously litigated on behalf of Plaintiff and class members against sophisticated and experienced defense counsel. *See id.* at ¶¶ 9-20, 49-50. And having done so, Plaintiff and her counsel obtained a meaningful recovery for class members.

Rule 23(e)(2)(D) also requires a court to confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Here, all class members have the same legal claims. Correspondingly, the Settlement provides that each participating class member will receive an equal portion of the Settlement Fund, after deducing the expenses. Additionally, the release affects each class member in the same way. As a result, consideration of the Rule 23(e)(2) factors supports preliminary approval.

### III.    The notice plan is sufficient.

Pursuant to Rule 23(e) a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties agreed to a robust notice program to be administered by a well-respected third-party claims administrator, CPT Group, Inc. (the "Claims Administrator"). Through the notice program, the Claims Administrator will use all reasonable efforts to provide direct mail notice to class members in the forms attached as exhibits to the Settlement Agreement. *See* Appendix A.

19

To start, the Claims Administrator will identify and verify contact information for persons associated with the telephone numbers to which Defendants delivered the text messages in question. In doing so, the Claims Administrator will run information through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. The Claims Administrator will then send each person identified through this process, via U.S. Mail, a postcard notice with a detachable claim form.

Separately, the Claims Administrator will establish a dedicated settlement website, through which class members can review relevant documents filed with this Court, review the summary question-and-answer notice, and submit claims. In addition, the Claims Administrator will establish a toll-free telephone number, through which class members can receive additional information.

To submit a valid claim, a class member will have to aver that Defendants delivered at least two text messages to his or her cellular telephone number, which they use as a residential telephone number, from September 13, 2019 through October 16, 2024.

The notice program, therefore, complies with Rule 23 and due process because, among other things, it informs class members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if a class member does not request exclusion; (4) the process regarding objections and exclusions, including the time and method for objecting or requesting exclusion, and that settlement class members may make an appearance through counsel; (5) information regarding Plaintiff's incentive award and her counsel's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7)

how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); Manual for Complex Litigation § 21.312.

## IV. This Court should set a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing, during which a court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the court then determines whether the settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). Here, the parties respectfully request that this Court set a date for a final approval hearing, at this Court's convenience, approximately four months after it preliminarily approves the parties' settlement.

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order certifying the class for settlement purposes; preliminarily approving the settlement as fair, reasonable, and adequate; appointing Plaintiff as the class representative, and Plaintiff's counsel as class counsel; approving and directing notice to class members; and setting a final fairness hearing date.

Dated: January 17, 2025                 Respectfully submitted,

*/s/ Alex D. Kruzyk*
Alex D. Kruzyk (pro hac vice)
Bryan A. Giribaldo (pro hac vice)
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
sAustin, Texas 78735
Tele: (561) 726-8444
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

Anthony E. LaCroix
LaCroix Law Firm LLC
1600 Genessee, Suite 956
Kansas City, Missouri 64102
Tele: (816) 399-4380

tony@lacroixlawkc.com

*Counsel for Plaintiff and the proposed class*